Elaine V. SAKELLARION, Plaintiff,

v.

JUDGE & DOLPH, LTD., and Wirtz Corp. a Delaware corporation, Defendants.

No. 95 C 61.

United States District Court, N.D. Illinois, Eastern Division.

July 18, 1995.

Stuart Joseph Bobrow, Matthew Charles Friedman, Law Offices of Stuart J. Bobrow & Associates, Chicago, IL, for plaintiff Elaine V. Sakellarion.

802

Howard A. Voeks, Godzecki, Zido & Behnke, Richard A. Del Giudice, Earl Edward Farkas, Gozdecki and DelGiudice, Chicago, IL, for defendant Judge & Dolph Ltd.

Howard A. Voeks, Godzecki, Zido & Behnke, Chicago, IL, for defendant Wirtz Corp., a Delaware Corp.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is the motion for summary judgment of Defendants Judge & Dolph, Limited ("Judge & Dolph") and Wirtz Corporation ("Wirtz"). In the alternative, Wirtz moves to dismiss the complaint against it for failure to state a claim upon which relief can be granted. For the following reasons, the motion for summary judgment is granted. Wirtz's motion to dismiss is denied as moot.

### FACTS [1]

Plaintiff Elaine Sakellarion ("Sakellarion") was an employee of Judge & Dolph from 1955 until she was discharged on January 10, 1994. She was sixty-two years old on the date of her discharge. Judge & Dolph is a wholesale distributor of wine and spirits located in Elk Grove Village, Illinois. Wirtz is the parent company of Judge & Dolph. Sakellarion alleges that she was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

Brenda Quigley ("Quigley") was Sakellarion's supervisor at Judge & Dolph from 1990 until she was discharged. According to Defendants, Sakellarion was terminated because of repeated absence from work, poor job performance, insubordination, and conduct which was disruptive to the efficient operation of the customer service department in which she worked. Sakellarion, on the other hand, asserts that she was an ideal employee who was singled out for termination merely because of her age.

Defendants submit that, despite Sakellarion's long employment with Judge & Dolph, her job performance began to deteriorate over the last few years. In each of her last two years of employment, Sakellarion failed to report to work on a Monday six times. She did this notwithstanding that Mondays are especially busy days in the customer service department where she worked, and her absence made it extremely difficult to handle the work load. In addition, Defendants contend that she spent too much time talking on the telephone with family members, often arguing loudly with them and disrupting the other employees. She became increasingly contemptuous of directions from her supervisor. Defendants assert that after an incident in which she was insubordinate to her immediate supervisor and was given a written reprimand, she crumpled up the report in front of her supervisor and pretended to use it as toilet paper. She then threw the report in the waste basket.

Because Sakellarion was frequently surly with customers who called into the customer service department, Judge & Dolph found it necessary to remove her from direct phone contact with customers. Additionally, her work in making record entries became so increasingly careless that a supervisor was required to review and approve all of her work before she was allowed to make any final record changes.

Sakellarion was eligible for three weeks of paid vacation, two paid personal holidays, and seven paid sick days per year. Typically, Sakellarion would use her allotted sick days within the first two or three months of the year. Therefore, on many occasions when she would not come to work on a Monday, she would ask for the day to be marked as a vacation day or personal holiday. In 1992, in addition to the above listed paid vacation, personal holidays and sick days, Sakellarion took four unscheduled days off without pay and seven weeks off after she severed a fingertip in an accident. In 1993, in addition to the total paid days off, she took nine days of leave for a claimed broken foot.

1. The facts are taken from the parties' submissions pursuant to Local Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois ("Local Rules").

Judge & Dolph's policy is that vacation days are to be used in one-week blocks and not as individual days off. Personal and vacation days are supposed to be scheduled at least one week in advance, and it was against policy to use vacation days as the equivalent of sick days. When Sakellarion failed to report to work and requested the days be marked as vacation days, Quigley would accommodate Sakellarion's request while admonishing her that the unplanned absences were extremely disruptive and should not be repeated.

From January 1993 to January 1994, Sakellarion was absent from work for extended periods three times without having scheduled the absences in advance. On Monday February 22, 1993, she called in saying she would not be in that day or the following day, but would be at work on Wednesday February 24. She refused to discuss the reason for her absence. On Wednesday, she failed to return as promised, did not call, nor did she return or call on Thursday. The following Monday, when Sakellarion finally returned to work, she claimed she had taken the time off because she was depressed about the death of her daughter, which had occurred four or five years before.

On Monday October 18, 1993, Sakellarion called in and said that she had injured her foot and would not be coming to work. On Monday October 25, 1993, Quigley called Sakellarion and Sakellarion informed Quigley that she was going to see her doctor about her foot and that she would call after her doctor's appointment to advise Quigley when she would return to work. Sakellarion did not call as promised; so Quigley was forced to call her. Sakellarion informed her that the doctor had rescheduled the appointment and promised again to call Quigley and inform her when Sakellarion would return to work. Again, Sakellarion failed to call in.

When Sakellarion failed to report to work on Monday November 1, the third Monday in succession, Quigley learned from the payroll department that Sakellarion was on short-term disability status and, therefore, receiving full pay. However, Sakellarion, as a part-time employee, was not eligible for short-term disability. After learning that Sakellarion was receiving disability pay, Quigley telephoned Sakellarion on Tuesday November 2 and advised her that she was ineligible. Sakellarion returned to work the next day.

On Monday January 3, 1994, Sakellarion called Quigley claiming that her thirty-six year-old daughter had been hospitalized with an asthma attack over the weekend. The daughter had been discharged from the hospital but required Sakellarion's assistance. Sakellarion requested that she be allowed to take Monday as her New Year's Day floating holiday. Despite that this was against company policy, Quigley granted the request. Sakellarion stated that she would also take Tuesday as a sick day to continue caring for her daughter, but that she would return to work on Wednesday January 5.

Sakellarion did not return to work on January 5, and she did not return until Monday January 10. Quigley states that the standard procedure followed by her assistant supervisors, Karen Linderman ("Linderman") being one them, is that they must communicate to Quigley any requests from employees requesting time off from work. To her knowledge, Linderman always followed the procedure. During the days between January 5 and January 10, Linderman did not report any communications with Sakellarion regarding additional time off.

Quigley contends that when Sakellarion returned on January 10, she stated that her daughter had not stayed with her during this period, but had stayed at her own apartment and that Sakellarion had only visited her daughter one day. After learning of this, Quigley terminated her because of this incident and repeated other incidents. Sakellarion has not been replaced.

Naturally, Sakellarion's view of the world is quite different. She asserts that whenever she took time off, she arranged to do so weeks in advance. When she was ill, she always called in early in the morning and spoke with Quigley or Linderman. She contends that she did not take more personal calls than any of her co-workers, nor did she

argue loudly on the phone with family members. Rather, Sakellarion contends that it was Quigley who argued constantly with family members on the telephone. Sakellarion insists that she was never insubordinate and denies that she crumpled up a written reprimand and pretended to use it as toilet paper. Sakellarion also notes that, with the exception of the referenced incident report, she always received excellent reviews, and she received a pay raise only three months before she was terminated.

Sakellarion asserts that she was not especially prone to taking Mondays off, although the records document that she was, and that she was never warned that doing so was disruptive to the department. She contends that in October 1993, she fractured her foot and was treated at Ravenswood Hospital, and was, therefore, forced to miss two weeks of work. Attached as Exhibit B to her Response is a copy of discharge instructions from the emergency room which indicate that she had either a sprain or fracture and that she was to use crutches.[2] Nothing on the form indicates that her rehabilitation required that she stay home from work.

With regard to the final incident prior to her termination, Sakellarion states that her daughter stayed with Sakellarion and her husband after she was released from the hospital until she was able to take care of herself. Sakellarion also asserts that she informed Quigley on Monday January 3, that she would need to miss the entire week due to her daughter's illness. However, she states that she only requested two days off, which Quigley granted. Sakellarion then contends that on each of the next three days, she spoke with Linderman who granted her subsequent requests for days off.

## DISCUSSION

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir. 1994); *Transportation Communications Int'l Union v. CSX Transp., Inc.*, 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it as a matter of law. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994). Nor will some metaphysical doubt as to the material facts suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

■ Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, the non-moving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

### A. ADEA Claim

■ Sakellarion has not put forward any direct evidence of discrimination and is, therefore, proceeding under the indirect method of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

---

2. The instructions do not clearly indicate that she had a fractured foot, nor do they indicate that she needed to stay home from work. Nevertheless, it does not matter, for she never gave this information to her employer. Thus, the employer had no reason to believe that she was being truthful.

S.Ct. 1817, 36 L.Ed.2d 668 (1972). Under the burden shifting method of *McDonnell Douglas,* the plaintiff must present evidence (1) that she was a member of the protected class, (2) she was meeting her employer's legitimate expectations with regards to her job performance, (3) her employment was terminated, and (4) her employer sought a replacement for her. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994).

■ Once the plaintiff establishes a *prima facie* case as delineated above, the burden shifts to the employer to articulate a legitimate reason for the employee's discharge. *Id.* If the employer is able to so articulate its reason for firing the employee, the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for age discrimination. *Id.* To meet this burden, the plaintiff may either present evidence that a discriminatory reason more likely motivated the employer, or that the purported explanation is unworthy of credence. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Sakellarion has failed to establish a *prima facie* case of discrimination in two respects: (1) she has not presented evidence that she was living up to Judge & Dolph's legitimate expectations; and (2) she has not presented evidence that Judge & Dolph sought a replacement for her after she was terminated. Furthermore, even had she been able to establish a *prima facie* case, Defendants have articulated legitimate reasons for her discharge, and she has not presented any evidence indicating that those reasons are not worthy of credence.[3]

Quigley's affidavit and supporting documentation submitted with the motion for summary judgment clearly establishes that Sakellarion was not meeting Judge & Dolph's legitimate expectations. The documents reveal that Sakellarion was prone to excessive absenteeism, with a particular proclivity for missing Mondays. Her self-serving statement that she did not miss an excessive amount of Mondays is blatantly contradicted by Judge & Dolph's attendance records. Sakellarion does not allege that these records are false; thus, it is merely her characterization of what constitutes an excessive amount which is at issue. However, her personal belief as to the quality of her Monday attendance record is not relevant, and disagreement about the proper characterization does not create a genuine issue of fact. *See Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992) ("An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability"); *Sample v. Aldi Foods, Inc.,* No. 93–3094, 1994 WL 374231 (N.D.Ill. July 14, 1994) ("Personal evaluations of one's own work performance are not relevant").

Moreover, it was Sakellarion's attendance record overall, and her repeated absences from work without adequate explanation, not just her repeated Monday absences, which constituted one of the reasons for her termination. Of the three instances in which Sakellarion failed to adequately inform her supervisor of her intention not to come to work that Defendants have posited as examples of her unreliability, Sakellarion only contends that the facts set forth regarding her daughter's asthma attack are inaccurate. Thus, she essentially admits that she was absent without proper consent on the other two occasions.[4]

■ Her generalized assertion that she always reported to Quigley or Linderman when she needed to skip work due to illness does not serve to rebut Defendants' specific examples of her failure to do so. "Rule 56

---

3. Because Judge & Dolph has proffered poor work performance as the reason for Sakellarion's termination, the analytical steps involved in determining whether she was meeting the legitimate expectation of her employer and whether Judge & Dolph's reasons for her termination were a pretext collapse into one. *Armstrong v. United Airlines, Inc.,* 883 F.Supp. 1172, 1179 n. 7 (N.D.Ill.1995).

4. The discharge instructions issued by Ravenswood Hospital in October 1993 regarding her purportedly fractured foot do not establish that she actually had a fractured foot. Moreover, and more importantly, they do not establish that she properly contacted Quigley and kept Quigley informed of when she would return to work.

requires [the plaintiff] to produce *specific facts* that cast doubt upon [the employer's] stated reason for its action or raise significant issues of credibility." *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1146 (7th Cir.1994).

Sakellarion's testimony with regard to the final incident prior to her termination also fails to raise a genuine issue of material fact. Sakellarion asserts that she called Quigley on Monday January 3, 1994, and requested that day off as a floating holiday and the following Tuesday off as a sick day. Notwithstanding that this was against company policy, Quigley allowed it. Sakellarion contends that she indicated that she would probably need the remainder of the week off, but only asked for those two days during the Monday conversation. Quigley asserts that Sakellarion said nothing about taking the entire week off. This conflict is insignificant, however, given that Sakellarion only asked for Monday and Tuesday off.

 Sakellarion's contention that she called Linderman on the each of the next three days and Linderman granted her requests for those days off may create a genuine issue as to whether she called Linderman. However, it does not create a genuine issue of fact precluding summary judgment because Quigley's testimony is that Linderman never informed her about Sakellarion's calls, if indeed she did call. Thus, Quigley was under the impression that Sakellarion never called to ask for Wednesday, Thursday, and Friday off. As a consequence of this impression, Quigley had reached the limit of her patience with Sakellarion and determined that she would be fired. That the decision may have been upon erroneous information does not create an inference of discrimination. "[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992).

 Once again, the court notes that this event constituted only one of many instances which Defendants have used as examples of Sakellarion's unreliability. In addition to her unreliability, Defendants have posited her poor work performance when she was on the job as an additional factor in its decision to terminate her employment. Sakellarion merely counters the assertions of poor performance and attitude with self-serving denials and protestations of adequate performance. An employee's opinion of her work performance does not raise an issue of fact for trial. *Gustovich,* 972 F.2d at 848. Sakellarion's assertion that she did not pretend to use the written reprimand as toilet paper is irrelevant. She received the reprimand as a result of her insubordination, and that she may not have added insult to injury by such a grotesque pantomime does not create a genuine issue of fact as to her original insubordination.[5]

 Contrary to her contention, that Sakellarion received a raise a few months before her termination does not necessarily indicate that Judge & Dolph was happy with her performance. It is the employee's performance at the time of the discharge that is determinative. *Rand,* 42 F.3d at 1146. Furthermore, an employer may have a many reasons for giving raises to an employee despite her performance rather than because of it. For instance, an employer may be giving across the board salary increases, or it might be attempting to raise the moral of a marginal employee with positive reinforcement. Thus, the mere fact of a recent salary increase, without more, is not necessarily indicative of an employer's satisfaction with an employee's performance, or even that she is meeting the bare minimum requirements.

Thus, Sakellarion has failed to demonstrate that she was performing up to the reasonable expectations of Judge & Dolph. She has also failed to present evidence which a reasonable jury could infer that Defendants' stated reasons were a pretext in that she was actually fired because of her age

---

5. Sakellarion's contention that she was never informed about the disruptive effect of Monday absences is also irrelevant. While it may have been bad policy not to inform Sakellarion that her behavior was having a negative effect on the company, bad policy does not give rise to an inference of discrimination. *See Rand,* 42 F.3d at 1146.

rather than because she was unreliable, surly towards customers, insubordinate to her superiors, and careless in her work.

In addition to the above deficiencies, Sakellarion has failed to present any admissible evidence that Judge & Dolph sought a replacement for her. Quigley's affidavit states that Judge & Dolph has not hired anyone to replace Sakellarion and that her duties were split among three other employees. In an affidavit supporting her Equal Employment Opportunity Commission charge, Sakellarion asserted that a woman in her thirties was transferred from another department at Judge & Dolph to replace her. There is no foundation for this assertion and it would not be admissible at trial. *See* Fed.Rule Evid. 602. Therefore, Sakellarion has failed to present evidence demonstrating that there is a genuine issue for trial on this point and summary judgment must be granted for this reason as well.

### B. FMLA Claim

Sakellarion also claims that Defendants violated the FMLA, 29 U.S.C. § 2615(a)(1), by terminating her after she allegedly took time of to care for her daughter after the daughter suffered an asthma attack. Sakellarion has failed to demonstrate that there is a genuine issue of fact for trial on this count, and the court grants Defendants' motion for summary judgment.

The FMLA provides that, under certain circumstances, an employer must allow an employee up to twelve workweeks of leave during any twelve-month period to care for a child who has a serious health condition. 29 U.S.C. § 2612(a)(1)(C). Sakellarion has failed to present evidence demonstrating that her daughter was suffering from a serious health condition as defined by the FMLA, 29 U.S.C. § 2611(11), and to present evidence that her daughter was incapable of self-care as required by the FMLA, 29 U.S.C. § 2611(12)(B).

The FMLA defines a serious health condition as:

an illness, injury, impairment, or physical or mental condition that involves—

(A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11).

Sakellarion's daughter did not require inpatient care as covered by § 2611(11)(A), and Sakellarion has not alleged, nor presented any evidence indicating, that her daughter required continuing treatment by a health care provider after she was discharged from the hospital. *See* 29 C.F.R. §§ 825.114(b), 825.118; *Seidle v. Provident Mutual Life Ins. Co.*, 871 F.Supp. 238, 244 (E.D.Pa.1994) (employee's son's ear infection was not a serious health condition where he was seen by the doctor on only one occasion, had no direct contact with the doctor subsequently, and thus, did not undergo continuing treatment). Therefore, Sakellarion has not presented evidence demonstrating that she is entitled to protection under the FMLA.

Similarly, Sakellarion has not presented any evidence that her daughter was incapable of self-care because of a physical or mental disability as required by the FMLA. 29 U.S.C. § 2611(12)(B); 29 C.F.R. § 825.113. Sakellarion has not submitted any medical records or other evidence indicating that her daughter was incapable of self-care other than Sakellarion's assertion that she needed to stay in bed. A plaintiff's assertion that her adult daughter needed to stay in bed, without more, is not sufficient evidence from which a jury could infer that the daughter was incapable of self-care. Accordingly, Defendants are entitled to summary judgment on this issue as well.

### CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted. Defendant Wirtz's motion, in the alternative, to dismiss is denied as moot.

IT IS SO ORDERED.