Tami WHITAKER, Plaintiff,

v.

BOSCH BRAKING SYSTEMS DIVISION OF ROBERT BOSCH CORPORATION, Defendant.

No. 1:00–CV–522.

United States District Court, W.D. Michigan, Southern Division.

Aug. 27, 2001.

H. Rhett Pinsky, Michael L. Fayette, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, for Plaintiff.

David A. Rhem, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, Rachel B. Cowen, Brian E. Spang, Connelly, Sheehan & Moran, Chicago, IL, for Defendant.

## OPINION

QUIST, District Judge.

Plaintiff, Tami Whitaker, sued her employer, Defendant Bosch Braking Systems

Division of Robert Bosch Corporation, alleging that Defendant violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 (FMLA), by denying her leave under the FMLA while she was pregnant. Plaintiff wanted to limit her working hours to eight hours per day, forty hours per week. Both parties have moved for summary judgment.

## I. *Facts*

Plaintiff's job consisted of standing on her feet at all times, constant moving, and inserting screws and plugs with a rivet gun. In December 1998, Plaintiff became pregnant. She experienced considerable "morning sickness"—nausea, vomiting, and cramping—because of the pregnancy. Plaintiff's physician, Dr. Robert Brown, advised Plaintiff to limit her working hours and get more rest. Dr. Brown was concerned that if Plaintiff spent too much time on her feet at work she would risk hypertension and premature delivery.

At oral argument, Plaintiff's attorney said that Plaintiff's need to be relieved from overtime was purely prophylactic. In other words, Plaintiff needed some relief from the long hours and heavy work in her factory job so that she could deliver a healthy baby. This is consistent with Dr. Brown's testimony. Delivery of a healthy baby was important to Plaintiff, as it is to most parents-to-be, as is shown by the fact that she had been using fertility drugs.

After speaking with her physician, Plaintiff met with her union representative and her supervisor. Plaintiff then applied for FMLA leave on January 18, 1999. The leave which Plaintiff sought was that she be relieved from working overtime which, from time to time, could be assigned to her under a collective bargaining agreement. She could and would continue to work forty hours per week. Plaintiff gave Defendant only a note signed by Dr. Brown which states:

14 Jan 1999

To whom it may concern

Tami Whitaker is pregnant and her work should be limited to 8 hours/day 40 hours/week.

Dennis Crossno, a human resources manager for Defendant, told Plaintiff that she had to fill out a leave form and bring in a doctor's note.[1] Thereupon, Plaintiff presented Defendant with an "Application for Family Leave of Absence" and a "Certification of Health Care Provider." The Certification is signed by Dr. Brown. Among other things, the certification says:

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

   *This patient is pregnant with a EDC of 9–14–99. The patient is required to complete all prenatal visit [sic] for a healthy pregnancy.*

5. a. State the approximate date the condition commenced, and the prob-

---

1. The recollections of Plaintiff and Crossno differ as to the order in which Plaintiff presented FMLA documentation to Crossno. Crossno claims that Plaintiff initially presented him with a doctor's note, and that only later did she present him with an FMLA form. (Crossno Dep. at 35–37, attached to Pl.'s Br. Supp. Mot.) Plaintiff alleges that she first presented Crossno with an FMLA form, and gave the doctor's note to him at their second meeting. (Whitaker Dep. at 22–27, attached to Pl.'s Br. Supp. Mot.) Neither party disputes

that Plaintiff presented Crossno with a doctor's note stating that her work should be limited to eight hours a day, forty days a week due to her pregnancy (Pl.'s Br. Supp. Mot. Ex. 2), or that Plaintiff presented Crossno with an FMLA form requesting a work limit of eight hours a day, forty hours a week due to a "normal pregnancy" (Pl.'s Br. Supp. Mot. Ex. 4), but that Defendant denied Plaintiff's request to take FMLA leave. The Court attempted to state the facts in a manner that will assist in a legal analysis.

able duration of the condition (and also the probable duration of the patient's present incapacity if different):

*LMP 12–7–98 with a EDC of 9–14–99. 40 wks. to completed pregnancy.*

b. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in Item 6 below)?

Yes ☒ No ☐ If yes, give the probable duration:

*To attend prenatal visits.*

c. If the condition is a chronic condition (condition # 4) or pregnancy, state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity.

*Normal pregnancy at this time. Due to pregnancy 8 hours a day, 40/wk should be allowed.*

(Footnotes omitted.) Defendant denied Plaintiff FMLA leave. Plaintiff submitted another note from Dr. Brown, but this note was identical to the first note and unsatisfactory to Defendant because it contained no medical detail.

After Defendant denied Plaintiff leave under the FMLA, Plaintiff refused to work overtime anyway. Crossno called Plaintiff into his office and told Plaintiff that if she did not get a doctor's slip stating that she could work overtime she would have to take short term disability leave. Plaintiff took the short term disability leave. She is suing for the difference between the wages and bonus she would have earned working forty hours per week less the amount she received from short term disability.

## II. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## III. *Discussion*

The FMLA was enacted in 1993 to "help men and women balance the conflicting demands of work and personal life." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir.1997); 29 U.S.C. § 2601(b). Coverage is afforded to employees who have been employed by a covered employer for at least a year and have worked at least 1,250 hours during the twelve month period in question. 29 U.S.C. § 2611(2)(A). The FMLA provides eligible employees with a maximum of twelve weeks of unpaid leave in a given twelve month period to attend to certain family and medical matters. 29 U.S.C. § 2612(a). Leave may be taken for specified reasons, including medical reasons, childbirth or adoption, or for the care of a spouse, parent, or child who suffers from a serious health condition. *Id.* An employee seeking leave for medical reasons or to care for a family member may take leave either intermittently on a reduced schedule when medically necessary. 29 U.S.C. § 2612(b). Upon return from FMLA

leave, an employer must restore an employee to her former job or another position with equivalent pay, benefits, and conditions of employment. 29 U.S.C. § 2614(a)(1). An employer who fails to provide an employee FMLA leave may be held liable for compensatory damages, liquidated damages, and interest. 29 U.S.C. § 2617.

An employee seeking FMLA leave is obligated to give the employer notice sufficient to alert the employer leave is FMLA-qualifying leave. 29 U.S.C. § 2612(e); *see also Brohm v. JH Props., Inc.,* 149 F.3d 517, 523 (6th Cir.1998)(stating that "to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave")(citing *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 762 (5th Cir.1995)). The regulations issued by the Department of Labor provide that the employee need not mention the FMLA by name, but is only required to give sufficient information to put the employer on notice that the leave may be FMLA-qualifying leave. 29 C.F.R. § 825.302(c). If an employee's request is unclear, the employer is required to inquire further to obtain the necessary details of the leave to be taken in order to ascertain whether the requested leave qualifies as FMLA leave. *Id.; see also Price,* 117 F.3d at 1025–26. An employer may require that an employee's request for leave be supported by a certification from the employee's health care provider. *See* 29 U.S.C. § 2613(a). The certification may request the health care provider to provide "appropriate medical facts" regarding the employee's serious health condition. 29 U.S.C. § 2613(b)(3).

In this case, Plaintiff claims that she was entitled to FMLA leave pursuant to 26 U.S.C. § 2612(a)(1)(D), which grants leave based on "a serious health condition that makes the employee unable to perform the functions of the position of such employee." To prevail on her claim, Plaintiff must show that:(1) she had a serious health condition; (2) that prevented her from performing her job duties; and (3) she gave Defendant reasonable notice of her need to take leave and the reasons for doing so. *Pendarvis v. Xerox Corp.,* 3 F.Supp.2d 53, 55 (D.D.C.1998).

The contested issues are whether Plaintiff had a serious health condition and, if so, whether Plaintiff provided Defendant sufficient proof of a serious health condition. Defendant does not dispute Plaintiff's status as an eligible employee under the FMLA or its status as a covered employer. Defendant also does not dispute that Dr. Brown is a health care provider under the FMLA.

## A. Did Plaintiff Have A "Serious Health Condition"?

■ The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Because Plaintiff was not an inpatient in a hospital, hospice, or residential medical care facility, the inquiry is whether Plaintiff had a physical condition involving continuing treatment by a health care provider. The statute does not provide further guidance on what constitutes continuing treatment by a health care provider. However, the Secretary of Labor has authority to promulgate regulations to implement the FMLA. 29 U.S.C. § 2654. Pursuant to that authority, the Secretary has issued regulations that address what constitutes continuing treatment by a health care provider. With regard to pregnancy, the pertinent regulation states:

(2) *Continuing treatment* by a health care provider. A serious health condi-

tion involving continuing treatment by a health care provider includes any one or more of the following:

. . . .

(ii) Any period of incapacity due to pregnancy, or for prenatal care.

29 C.F.R. § 825.114(a)(2)(ii). A period of incapacity includes "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i).

Plaintiff contends that the condition of pregnancy, without more, is a serious health condition. Plaintiff asserts that in enacting the FMLA, Congress intended all pregnancies, not just "abnormal pregnancies", to constitute a serious health condition. There is some support for this argument. The legislative history of the FMLA contains language that "ongoing pregnancy" is a serious health condition. *See* H.R.Rep. No. 103–8 (1993), *reprinted in* 1993 U.S.C.C.A.N. at 3, 31 (listing "ongoing pregnancy" as a possible serious health condition); S.Rep. No. 103–3 (1993), *reprinted in* 1993 U.S.C.C.A.N. at 30–31 (same).

Defendant argues that pregnancy is a serious health condition only if it renders an employee incapacitated or otherwise unable to perform her job. Defendant relies on 29 C.F.R. § 825.114(a)(2)(ii), quoted above, and 29 C.F.R. § 825.112(c), which states: "Circumstances may require that FMLA leave begin before the actual date of birth of a child. An expectant mother may take FMLA leave . . . before the birth of the child for prenatal care of if her condition makes her unable to work." Other legislative history supports Defendant's position. In particular, the Senate Report states that, "[w]ith respect to an employee, the term 'serious health condition' is intended to cover conditions or illnesses that affect an employee's health to the extent that he or she must be absent from work on a recurring basis or for more than a few days for treatment or recovery." S.Rep. No. 103–3, 1993, *reprinted in* 1993 U.S.C.C.A.N. at 30.

Few courts have considered whether pregnancy, by itself, constitutes a serious health condition. Of those that have, most have held, at least implicitly, that pregnancy is not a serious health condition unless the pregnancy and related conditions precluded the employee from performing her job. In *Gudenkauf v. Stauffer Communications, Inc.,* 922 F.Supp. 465 (D.Kan. 1996), the court considered the legislative history and pertinent Department of Labor regulations in determining whether pregnancy is a serious health condition. After concluding that the regulation, 29 C.F.R. § 825.114(a)(2)(ii), was a reasonable interpretation of the FMLA, the court held that the plaintiff's request for leave was not covered by the FMLA unless the plaintiff presented "evidence from which a reasonable jury could find that her pregnancy and related conditions kept her from performing the functions of her job." 922 F.Supp. at 475. The court then went on to consider whether the plaintiff's evidence supported a conclusion that the plaintiff was unable to perform the functions of her job as a result of the pregnancy. Because the *Gudenkauf* court's analysis is vague on this point, it is difficult to tell whether the court simply avoided the issue by focusing on the second requirement of her claim or whether the court determined that "incapacity" must occur as a result of the pregnancy. The answer seems to lie in a footnote, in which the court stated:

The "incapacity" requirement in 29 C.F.R. § 825.114(a)(2) is consistent with the requirement in 29 U.S.C. § 2612(a)(1)(D) that the health condition be so serious that the employee is unable to perform the functions of his position. Though Congress listed "ongoing pregnancy" as an example of a serious

health condition, pregnancy entitles the employee to FMLA leave only if prenatal care is needed or her condition makes her unable to work. 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. §§ 825.112(c), 825.114(a)(2).

*Id.* at 475 n. 12. It appears to this Court that the *Gudenkauf* court found that the "incapacity" requirement of 29 C.F.R § 825.114(a)(2) must be established in order for pregnancy to constitute a serious health condition, even though it considered it redundant of the requirement of 29 U.S.C. § 2612(a)(1)(D) that the condition render the "employee unable to perform the functions of the position."

The court in *Dormeyer v. Comerica Bank—Ill.,* No. 96 C 4805, 1997 WL 403697 (N.D.Ill. July 15, 1997), was more direct. There, in addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court found that the plaintiff's allegation that her pregnancy was a serious health condition was insufficient because, it reasoned, "[p]regnancy *per se* is not a serious health condition under the FMLA, absent allegations that the pregnancy has caused plaintiff to be incapacitated (i.e. unable to perform the functions of the job)." 1997 WL 403697, at *2. More recently, the First Circuit touched on the issue of pregnancy as a serious health condition in *Navarro v. Pfizer Corp.,* 261 F.3d 90 (1st Cir.2001). There, in discussing the requirement of a serious health condition, the court observed, "one way to demonstrate a serious health condition based on continuing treatment by a health care professional is to show that the underlying condition involves a period of incapacity due to pregnancy or for prenatal care." 261 F.3d at 93–94. The plaintiff in that case sought leave pursuant to 29 U.S.C. § 2612(a)(1)(C) to care for her daughter, who was pregnant. The court held that plaintiff's evidence was sufficient to establish a serious medical condition because

the doctor's certification demonstrated that the daughter's incapacity was tied to her pregnancy. *Id.*

In *Harvender v. Norton Co.,* No. 96–CV–653, 1997 WL 793085 (N.D.N.Y. Dec.15, 1997), the court stated, in dicta, that pregnancy is "patently a 'serious health condition' under the [FMLA]." *Id.* at *7. The facts of that case were somewhat unusual because, instead of the employee claiming that FMLA leave was improperly denied, the employee alleged that the employer violated the FMLA by placing her on FMLA leave. The employee worked with chemicals as part of her job. The employer placed the employee on FMLA leave after it learned that the employee was pregnant and should not be working with or exposed to chemicals. The court concluded that nothing in the FMLA prevented the employer from placing the employee on FMLA leave and that the employer properly did so because the plaintiff's pregnant condition was a serious health condition under the FMLA. Notably, the court did not cite any statute, regulation, or legislative history to support its statement that pregnancy is "patently a 'serious health condition.'" *Id.*

▬ This Court agrees with *Dormeyer* that pregnancy "per se" is not a serious health condition. The regulations, which this Court finds to be reasonable and a valid exercise of the Secretary of Labor's authority, explicitly provide that pregnancy can be a serious health condition based upon continuing treatment by a health care provider only if the pregnancy produces a period of incapacity or if prenatal care is sought. 29 C.F.R. § 825.114(a)(2)(ii). The regulations acknowledge that pregnancy is treated differently from other conditions because in most cases, the employee must establish incapacity for more than three consecutive calendar days, *see* 29 C.F.R.

§ 825.114(a)(2)(i), and either treatment two or more times by a health care provider or at least one treatment by a health care provider resulting in a regimen of treatment under the supervision of the health care provider, *see* 29 C.F.R. § 825.114(i)(A),. (B), while a pregnant employee need not establish those conditions. However, "incapacity" is a requirement all FMLA plaintiffs must show. *See Navarro*, 261 F.3d at 95–96 (stating that "one way to demonstrate a serious health condition ... is to show that the underlying condition involves a period of incapacity due to pregnancy"); *Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 123 (8th Cir.1997)("Uniformly, courts applying the FMLA expressly or impliedly have required a showing of incapacity."); *Price*, 117 F.3d at 1025 ("It will be important [for the trier of fact] to consider, among other things, .... what was Price's period of incapacity?"); *Beal v. Rubbermaid Commercial Prods., Inc.*, 972 F.Supp. 1216, 1227 (S.D.Iowa 1997)(concluding that the plaintiff's back injury did "not appear to meet the requisite incapacity for protection under the FMLA").

Because the Court has determined that pregnancy per se does not constitute a serious health condition, Plaintiff can succeed in establishing her claim only if she can establish a period of incapacity due to her pregnancy. Defendant asserts that Plaintiff cannot establish a serious health condition because the Certification and notes submitted by Dr. Brown indicated that Plaintiff was having a normal pregnancy, there were no facts showing that her pregnancy rendered her unable to work overtime, and there were no physical restrictions. According to Defendant's view, if Plaintiff was having a normal pregnancy and was otherwise not physically unable to perform her job duties, she did not have a serious health condition under the FMLA.

In *Gudenkauf*, the court concluded that the plaintiff's own deposition testimony and affidavit regarding back pain, nausea, headaches and swelling during her pregnancy failed to show that she suffered from a serious health condition because neither the plaintiff's obstetrician nor her registered nurse practitioner either "directed or authorized" the employee to take leave for her pregnancy, and her obstetrician testified that the plaintiff's medical records did not show that the plaintiff requested or that the obstetrician gave any authorization to take leave prior to the delivery. 922 F.Supp. at 475–76. Other reasons cited by the court for the conclusion that the plaintiff did not have a serious health condition were: (i) the plaintiff's obstetrician confirmed that her pregnancy was normal and the complaints she had were not unusual or severe; (ii) the obstetrician never noted any conditions during the pregnancy that would have impaired the plaintiff's ability to work; (iii) the nurse practitioner stated that she signed a leave form authorizing maternity benefits after delivery but did not authorize leave prior to delivery; and (iv) the nurse practitioner never considered the plaintiff's complaints significant enough to discuss with the obstetrician for purposes of authorizing leave. *Id.* at 476.

In *Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028 (M.D.Tenn.1995), a non-pregnancy case, the plaintiff was fired for excessive absenteeism based upon a point system. The termination resulted from the plaintiff's two absences that occurred shortly before the termination, one due to the plaintiff's own illness and another due to the plaintiff's daughter's illness. The evidence with regard to the plaintiff showed that she left work due to illness and vomiting and was absent from work the following three days. The plaintiff went to see her physician, complaining of various conditions, including nausea and

vomiting. The physician testified that he noted a runny nose but no other abnormalities and diagnosed the plaintiff's condition as gastroenteritis and an upper respiratory infection. The physician prescribed three medications for the plaintiff's conditions and issued the plaintiff a certificate authorizing the plaintiff to return to work. There was no evidence that the physician advised the plaintiff to remain off work, nor was the physician able to testify that the plaintiff was unable to work due to her illness. The evidence with regard to the plaintiff's daughter's illness showed that the plaintiff and her husband took their daughter to the emergency room on January 9 after she was ill with fever for several days. The emergency room physician's examination revealed a low fever, runny nose, and reddened throat, but no unusual symptoms were observed. The physician diagnosed an infected throat and an upper respiratory infection and prescribed an antibiotic. The physician did not see the daughter again, and her fever went down two days later. The physician testified that a child such as the plaintiff's daughter should not go to day care if she has a fever, and that based upon the daughter's condition, he recommended that she stay home from day care the following two days. In addition, the physician testified that he gave the plaintiff a note excusing her from work until January 12. The plaintiff's husband delivered the note to the employer on January 10 or 11. The plaintiff returned to work on January 12. In ruling on the parties' motions for summary judgment, the court held that the plaintiff's evidence did not show that she had a serious health condition, although it did establish that the daughter had a serious health condition. With respect to the plaintiff's illness, the court observed:

> Plaintiff does not meet the definition of serious health condition because, although she saw a doctor and was given three prescriptive drugs, there is no proof that plaintiff was "incapacitated" for more than three calendar days. Plaintiff stayed home from work for more than three days, but plaintiff cannot show she was unable to work, or that her absence was "due to" her illness. 29 C.F.R. § 825.114(a)(2)(i). First, Dr. Clapp never advised plaintiff to remain off work. Dr. Clapp's speculation that it was reasonable for someone to miss three or four days for her type of illness is insufficient to prove that the absence was necessary. Second, plaintiff's own testimony that she was "too sick to work" is also insufficient to prove that her absence was necessary. Finally, Dr. Clapp cannot testify that plaintiff was unable to perform the functions of her job at the Jamestown plant in light of her illness. 29 U.S.C. §§ 2612(a)(1)(D).

*Id.* at 1037. On the other hand, the court held that the evidence showed that the plaintiff's daughter was incapacitated (i.e., unable to go to day care), because the physician advised that the daughter should stay home from day care until she was free of fever. The court held that the plaintiff's testimony that the daughter had a fever for more than three days, "coupled with medical testimony that [the daughter] should have remained out of day care while she had a fever, is sufficient to prove that she was incapacitated for more than three consecutive calendar days." *Id.*

■ *Gudenkauf* and *Brannon* hold that a plaintiff may prove "incapacity" through evidence that a health care provider determined that the plaintiff was unable to work because of the injury or illness. As one court has stated:

> Under this standard, in order to show that he or she was "required" to miss work for more than three days, a plaintiff employee must show that he or she was prevented from working *because of*

the injury or illness based on a medical provider's assessment of the claimed condition .... it means that a "health care provider" has determined that, in his or her professional medical judgment, the employee *cannot* work (or could not have worked) *because* of the illness.

*Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D.Ohio 1997)(citing *Seidle v. Provident Mut. Life Ins. Co.*, 871 F.Supp. 238, 244 (E.D.Pa.1994)). Plaintiff's evidence meets this standard. In fact, it is undisputed that Plaintiff's physician, Dr. Brown, examined Plaintiff and advised her that due to her pregnancy, she should not work more than eight hours per day due to the fact that her job involved continuous standing. In fact, Dr. Brown testified that prolonged standing (periods of greater than eight hours during the first twenty-four weeks of pregnancy and greater than four hours after that time) could result in early termination of the pregnancy or, later in the pregnancy, premature labor. (Brown Dep. at 36–38.) Moreover, Dr. Brown confirmed that the requirement that Plaintiff work overtime presented an unacceptable risk to the pregnancy. (*Id.* at 39.)

Defendant's primary argument is that Plaintiff cannot establish a serious health condition because she had a normal pregnancy and was physically able to perform her job. While Defendant's argument is factually correct, it fails as a matter of law because nothing in the FMLA provides that a pregnancy can constitute a serious health condition only if the pregnancy is abnormal or if the employee is physically unable to perform her job. Plaintiff had a normal pregnancy and was physically able to perform her job; yet, she was prevented from working due to the restrictions imposed by her doctor *because* of her pregnancy. What Defendant's argument fails to take into account is that two women with normal pregnancies may be exposed to different risks because of different job duties. A pregnant legal secretary, for example, with ordinary secretarial duties, is unlikely to be exposed to any special risks to her pregnancy (other than those posed by working for a lawyer) in the course of her job. On the other hand, extreme heat may pose a risk to the pregnancy of a woman working on a road crew. Exposure to chemicals on the job, as was the case with the plaintiff in *Harvender, see* 1997 WL 793085, at *1, 7, may also present an unacceptable risk to a woman's pregnancy. In the instant case, the unacceptable risk was requiring a pregnant woman to stand on her feet for more than eight hours per day. Plaintiff may have been physically able to perform her job, but she was prevented from doing so by Dr. Brown's restriction. What Defendant's argument really boils down to is this: a pregnant woman exposed to a job-related risk to her pregnancy does not have a serious health condition under the FMLA until the injury occurs to the mother or the unborn child. This Court does not believe that Congress intended such a result. Therefore, Plaintiff has established a serious medical condition.

**B. Did Plaintiff Provide Sufficient Proof of a Serious Health Condition?**

■ Defendant also asserts that Plaintiff's claim must fail because she failed to provide adequate documentation of a serious health condition.[2] As mentioned above, pursuant to 29 U.S.C. § 2613(a), an

---

**2.** Defendant does not argue that it did not have notice that Plaintiff's request for leave was for FMLA leave.

employer may require that a request for leave under 29 U.S.C. § 2612(a)(1)(D) be "supported by a certification issued by the health care provider." The certification must state, among other things: (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; (4) if leave is sought under 29 U.S.C. § 2612(a)(1)(D), a statement that the employee is unable to perform the functions of the position of the employee; and (5) in the case of certification for intermittent leave, or leave on a reduced leave schedule, under 29 U.S.C. § 2612(a)(1)(D), a statement of the medical necessity for the intermittent leave or leave on a reduced leave schedule, and the expected duration of the intermittent leave or reduced leave schedule. *See* 29 U.S.C. § 2613(b). If the employer is dissatisfied with the certification, it may require, at its own expense, second and third certifications. *See* 29 U.S.C. § 2613(c), (d).

Citing *Sims v. Alameda–Contra Costa Transit District,* 2 F.Supp.2d 1253 (N.D.Cal.1998), Plaintiff asserts that because Plaintiff complied with Defendant's request for a medical certification and Defendant chose not to assert its right to obtain a second certification, Defendant is barred from challenging the findings in the first certification. The Court need not rule upon Plaintiff's estoppel/waiver argument, however, because Plaintiff fully complied with Defendant's request by submitting a completed certification and Defendant has not presented any evidence undermining the conclusions of Dr. Brown's certification. On the certification, Dr. Brown checked category 3 under question number 3, which indicated that Plaintiff had a serious health condition because she had a period of incapacity due to pregnancy. Under question number 4, which requests the medical facts, Dr.

Brown stated that the patient was pregnant. In answer to question 5c., which asks whether the patient is presently incapacitated, Dr. Brown wrote, "Normal pregnancy at this time. Due to Pregnancy 8 hours a day, 40/wk should be allowed."

Defendant's only objection to the sufficiency of the certification is that it indicated that Plaintiff was having a normal pregnancy and there was no indication Plaintiff was physically unable to perform her job. However, in light of the restrictions indicated on the form and given Defendant's knowledge that Plaintiff's job involved almost continuous standing for eight hours, Defendant should have understood the reason for the restrictions. Moreover, Plaintiff provided Defendant with two notes from Dr. Brown indicating that Plaintiff's work should be limited to eight hours per day/forty hours per week due to her pregnancy. If the reasons for Dr. Brown's restrictions were not clear to Defendant, it could have sought clarification, with Plaintiff's permission, by having its own health care provider contact Dr. Brown. *See* 29 C.F.R. § 825.307. Instead, it chose to deny the request on the grounds that a normal pregnancy is not a serious health condition.

*Davis v. Henderson,* No. 99–3028, 2000 WL 1828476, 2000 U.S.App. LEXIS 31946 (6th Cir. Dec. 4, 2000), cited by Defendant, is distinguishable from this case because the plaintiff in that case provided an incomplete certification form without any statement from his doctor discussing his condition or his diagnosis. *Id.* at *4, 2000 U.S. App. LEXIS 31946 at *12. In addition, the employer made requests for additional evidence. *Id.* Here, Plaintiff submitted a completed certification and Defendant did not ask for further information. Because Defendant has not submitted any evidence from a health care

provider refuting Dr. Brown's findings, Plaintiff is entitled to summary judgment on this issue.

## C. Was Plaintiff Unable to Perform the Functions of Her Job?

■ Merely having a serious health condition does not, by itself, entitle an employee to FMLA leave. The serious health condition must be one "that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The regulations provide:

> An employee is "unable to perform the functions of the position" where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act.

29 C.F.R. § 825.115. In the instant case, working overtime was an essential function of Plaintiff's position in that Plaintiff was, in essence, given a choice of taking short term disability or being disciplined for refusing overtime. Given Defendant's requirement that Plaintiff either obtain a note from Dr. Brown certifying her fitness for overtime work or take short term disability, there can be no dispute that working overtime was an essential function of Plaintiff's job.[3]

■ Plaintiff has shown that there is no genuine issue of material fact with respect to her entitlement to leave. "Once a party has demonstrated by a preponderance of the evidence entitlement to disputed FMLA leave, then the party's employer is liable for any deprivation of the right to take that leave. The employer's intent is irrelevant." *Ozolins v. Northwood–Kensett Cmty. Sch. Dist.*, 40 F.Supp.2d 1055, 1065 (citing *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir.1999)). Therefore, Defendant is liable for violating Plaintiff's rights under the FMLA.

## IV. Conclusion

For the reasons stated herein, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's motion for summary judgment.

An Order consistent with this Opinion will be entered.

---

**3.** In the medical certification Dr. Brown checked the box marked "no" in response to the question of whether Plaintiff was unable to perform one or more of the essential functions of her job. However, Dr. Brown is not a lawyer and cannot necessarily be expected to know the appropriate legal terminology to describe Plaintiff's condition. Dr. Brown testified that Plaintiff should not work overtime because doing so could present a health risk to her and her baby. He felt that she should not stand more than eight hours a day, forty days a week. (Brown. Dep. at 39.) Because standing is an essential function of Plaintiff's job, Dr. Brown's testimony is enough for the Court to find that Dr. Brown felt that Plaintiff should not work overtime because she was unable to perform an essential function of her job, i.e. standing, for more than forty hours a week, eight hours a day.