**Julian BRIONES III, et al.**

v.

**GENUINE PARTS CO. d/b/a NAPA Auto Parts**

**No. Civ.A. 01–1792.**

United States District Court, E.D. Louisiana.

Aug. 12, 2002.

Rodney Glenn Cater, Jennifer N. Willis, Cater & Willis, New Orleans, LA, Jeffrey Thomas Reeder, Attorney at Law, New Orleans, LA, for Plaintiff.

Eddward Francis Harold, Fisher & Phillips, LLP, New Orleans, LA, Reginald C. Johnson, McGlinchey Stafford, PLLC, New Orleans, LA, Marty N. Martenson, Patricia E. Simon, Scott E. Atwood, Martenson Law Firm, Atlanta, GA, for Defendant.

## ORDER AND REASONS

ZAINEY, J.

Before the Court are **Claimant's Motion for Partial Summary Judgment (Rec.Doc. 21)** filed by plaintiffs Julian Briones III, individually and on behalf of his minor son Calixto Briones (collectively "Plaintiff" or "Briones"), and a **Motion for Summary Judgment (Rec.Doc. 24)** filed by defendant Genuine Parts Company d/b/a NAPA Auto Parts ("GPC"). Both motions are opposed and are before the Court on the briefs without oral argument.[1]

Briones filed this suit following his termination from employment with GPC in July 2000. Briones claims that GPC terminated him in violation of the Family Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. §§ 2601–2654, and moves for partial summary judgment on that issue. GPC maintains that Briones was terminated for reasons outside the scope of the FMLA and moves for cross summary judgment on the FMLA claim. GPC also moves for dismissal of Briones' ERISA claims and intentional infliction of emotional distress claims. For the reasons that follow, Briones' motion is DENIED, and GPC's motion is DENIED IN PART AND GRANTED IN PART.

### Factual Background

In May 1999, Briones began working at GPC's distribution center in Jefferson, Louisiana making deliveries and working as a warehouseman. At the time Briones was not employed by GPC but was on contract to GPC through Temps Today, a local employment agency which provides employees on a temporary basis. On August 30, 1999, GPC hired Briones to perform essentially the same job he had performed while on temporary status.[2]

On July 1, 2000, Briones' sixteen month old son Calixto became gravely ill and required hospitalization for several days. Because Ms. Briones' presence was required at the hospital with Calixto, Briones decided that he would have to stay at home at night with his other three children. Because he worked nights, this meant he would have to take leave from work. Briones did not report for his Thursday and Friday evening shifts on July 6 and 7, but in accordance with GPC's policy Briones called his supervisor before 11:00 a.m. on the morning of each day he was to miss. Briones was not scheduled to work on Saturday July 8 or Sunday July 9.

On Monday July 10, 2002, Briones' immediate supervisor, Eddie LaPorte, called Briones' home to speak with him but was told by Briones' mother that he was not at home. Briones called GPC later that morning and eventually spoke with Robert Dennis. Briones claims that he specifically requested FMLA leave, and stated that he would return to work the next day. He claims that Dennis then asked him to resign. Briones reported for work the next evening on Tuesday July 11 but was immediately fired upon his arrival.

GPC contends that Briones was terminated for dishonesty rather than anything to do with his absences. GPC claims that Briones' call was received by Dennis while LaPorte was still on the phone with Briones' mother. GPC *suggests*[3] that

---

1. Plaintiff's motion was set for hearing on July 17, 2002. Defendant's motion was set for hearing on July 31, 2002.

2. Thus far GPC has not challenged Briones' "eligibility" under the FMLA even though

part of Briones' employment time with GPC was as a temporary contract employee.

3. LaPorte's declaration (GPC's Motion Exh. 7 ¶ 7) is: confusing because LaPorte states that he asked Briones where he was and then responded, "You can't be home, where are

Briones claimed to be at home when La-Porte asked him where he was however Briones' mother had just told Dennis that Briones was *not* at home.

After Dennis ended the conversation with Briones on July 10, 2000, GPC alleges that Dennis, LaPorte, and Ms. Rubio (GPC's Human Resources Manager) decided to terminate Briones for dishonesty effective July 11, 2000.[4] On July 11, when Briones reported for his evening shift, La-Porte fired him. GPC asserts that Briones was always told that the termination was for dishonesty and that La-Porte never told Briones that he was being terminated due to any health care cost concerns on the part of GPC.

Briones filed suit claiming that he was terminated in violation of the FMLA and that GPC violated the Employee Retirement Income Security Act ("ERISA") by intentionally interfering with his receipt of medical benefits. He also claims damages for intentional infliction of emotional distress pursuant to state law.

### The Parties' Motions

Briones moves for partial summary judgment on the FMLA claim. He argues that he was an "eligible employee" as defined by the Act, that Calixto suffered from a "serious health condition" as required by the Act, and that Briones was therefore terminated in violation of the Act.

In opposition, and on cross motion for summary judgment on the FMLA claim,

GPC argues that Briones fails to demonstrate that he was entitled to leave under the FMLA because staying home to baby-sit three healthy children is not an FMLA-qualifying event. Rather, the Act only entitles one to leave in order to care for those immediate family members who suffer from a serious health condition. Moreover, GPC terminated Briones for a legitimate reason having nothing to do with his absences, *i.e.*, dishonesty.

GPC also argues that because Briones's leave was not qualified for FMLA status, GPC engaged in no prohibited conduct under the Act, *i.e.*, firing Briones. GPC argues that Briones does not even present a *prima facie* case of discrimination under the FMLA and even if he does, GPC has articulated a legitimate, non-discriminatory reason for Briones' discharge which Briones cannot prove is pretextual.

GPC also moves for summary judgment on the ERISA claim and state law negligent infliction of emotional distress claim. GPC argues that Briones has no evidence to establish that GPC intentionally interfered with his receipt of medical benefits so as to recover for a violation of section 510 of ERISA. Likewise, GPC argues that Briones has no evidence to establish a claim for intentional infliction of emotional distress under state law.[5]

In opposition, Briones argues that he was entitled to leave under the FMLA because he did in fact spend time at the hospital with Calixto—albeit during the

---

you?" LaPorte never states that Briones said that he was at home. Strangely, Robert Dennis's declaration reads the same way. (*Id.* Exh. H at ¶ 6).

4. GPC has an Honesty Policy which provides in part that "[t]he Company has a very firm policy about Honesty and will not hesitate to discharge . . . any member of the organization who falsifies records, statements, or claims. . . ." GPC's Opposition at 6.

5. At this time GPC is not contesting that Briones was an "eligible employee" under the Act or that it was an employer covered by the Act. Nor does GPC dispute that Calixto Briones suffered from a "serious health condition" as required by the Act. Thus, for purposes of the instant motion, the Court will assume without deciding that these requirements of the Act are met.

daytime hours. Therefore, at night he needed to sleep and could not function as a driver at night. The fact that he had his other three children at home with him at night is immaterial because his activities during the day entitled him to leave. Briones argues that the evidence demonstrates that GPC's articulated reason for firing Briones, *i.e.*, his dishonesty, is clearly pretextual and a sham.

Briones did not oppose GPC's motion with respect to the ERISA and intentional infliction of emotional distress claims.

In reply, GPC asserts that Briones is now arguing for the first time that he required FMLA leave in order to spend days at the hospital with Calixto in addition to the nights at home with his three other children. GPC asserts that this assertion is contradicted by the evidence offered in support of Briones' own motion for partial summary judgment. Furthermore, even if Briones did take leave for such a purpose, he never advised anyone at GPC. Rather, he always maintained that the reason he needed time off was to care for the other three children—a non-FMLA qualifying event.

### Discussion

#### I. Summary Judgment Standards

In determining whether a party is entitled to summary judgment, the court views the evidence in the light most favorable to the non-moving party. *Littlefield v. Forney Indep. School Dist.*, 268 F.3d 275, 282 (5th Cir.2001) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir.1998)). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986)). The moving party bears the burden, as an initial matter, of showing the district court that there is an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2548). If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmoving party's response. *Id.*

#### II. Briones' FMLA Claim

■ The FMLA was enacted in 1993 to "help men and women balance the conflicting demands of work and personal life." *Whitaker v. Bosch Braking Sys.*, 180 F.Supp.2d 922, 924 (W.D.Mich.2001) (quoting *Price v. City of Fort Wayne*, 117 F.3d 1022 (7th Cir.1997); 29 U.S.C. § 2601(b)). The Act requires employers to provide up to 12 weeks of unpaid leave to any eligible employee who must care for a spouse, parent, or child who suffers from a "serious health condition." *Id.* (citing 29 U.S.C. § 2612(a)). In other words, the absence must be for "FMLA-qualifying leave." *See Whitaker*, 180 F.Supp.2d at 926 (citing 29 C.F.R. § 825.302(c)). Employers have a *prescriptive* obligation under the Act in that they must grant employees substantive rights guaranteed by the FMLA, and a *proscriptive* obligation in that they cannot penalize employees for exercising these rights. *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir.1999) (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151 (1st Cir.1998)). An employer who fails to comply with the FMLA may be held liable for compensatory damages, liquidated damages, and interest. *Whitaker*, 180 F.Supp.2d at 926 (citing 29 U.S.C. § 2617).

An employee seeking FMLA leave is obligated to give the employer notice sufficient to alert the employer that the absence is for FMLA-qualifying leave.

*Whitaker*, 180 F.Supp.2d at 926 (citing 29 U.S.C. § 2612(e)). However, the employee need not mention the FMLA by name but rather is only required to give sufficient information to put the employer on notice that the leave may be FMLA-qualifying leave. *Id.* (citing 29 C.F.R. § 825.302(c)). Department of Labor regulations place the burden on the employer to clarify an employee's request when unclear and to inquire further to obtain the necessary information to determine whether the requested absence would be FMLA-qualifying leave. *Id.*

■ Based on the foregoing explanation of the FMLA, the threshold issue for the Court to decide with respect to the cross motions for summary judgment is one of law, *i.e.*, whether Briones' absence from work to care for his three healthy children while his wife cared for his son Calixto in the hospital constituted FMLA-qualifying leave.[6] If the Court concludes that the leave was not FMLA-qualifying, then the FMLA aspect of Briones' suit necessarily comes to an end, regardless of how Briones characterized the request for leave.[7] If however the Court determines that the leave was FMLA-qualifying as a matter of law, then the Court must proceed further to determine whether Briones is entitled to judgment as a matter of law on the FMLA claim.

Although GPC cites numerous authorities which recognize that absences to care

for a child *without* a "serious health condition" is *not* FMLA-qualifying leave, *e.g.*, *Evans v. Henderson*, 2001 WL 109771 (N.D.Ill. Feb.5, 2001), those cases do little to address the application of the FMLA to the facts involved in this case. Although Briones did request leave to baby-sit his healthy children, he did so only because his wife's presence was required at the hospital in order to care for their child who *did* suffer from a serious health condition. Thus, based upon the Court's understanding of the case at this juncture, Briones would have been entitled to FMLA leave had he been at the hospital caring for Calixto himself instead of using leave to facilitate Ms. Briones' fulfilling that role. In light of this factual scenario, GPC's characterization of Briones' leave request as one of merely "baby-sitting healthy children," an activity *not* covered under the Act, focuses the inquiry far too narrowly.

Unfortunately, the Court's research has revealed no case that squarely addresses the unique factual scenario presented by Briones' claim. However, in an unpublished opinion, the Sixth Circuit reversed a district court's grant of summary judgment for an employer based partially upon the district's court's finding that plaintiff had taken time off to care for his older children while his newborn infant was hospitalized. *Willard v. Ingram Constr. Co.*, 1999 WL 801580, at *3 (6th Cir.1999). Upon vacating that judgment, the appel-

---

**6.** The Court notes that Briones also claims that he spent some of his daytime hours at the hospital with Calixto and therefore would have been unable to drive at night. GPC argues that this argument is now being raised for the first time in opposition to its motion for summary judgment, and that such an assertion contradicts Briones' own evidence such as his deposition testimony. The accuracy of this disputed fact can best be resolved at trial.

**7.** Briones has never denied that when he asked for leave he advised GPC that time off

was needed to care for his three healthy children while his wife stayed with Calixto in the hospital. *Id.* at Exh. B ¶ 7 (affidavit of Edlyn Briones). In his deposition, however, Briones stated that he specifically asked for FMLA leave, Plaintiff's Motion Exh. 2 at 152. As explained above, federal regulations do not require the employee to specifically invoke the FMLA in order to reap its protections. On the other hand, if his need for the leave was not for an FMLA-qualifying reason, then his FMLA claim must be dismissed regardless of his having specifically mentioned the Act.

late court stated that "a parent may be needed to care for a newborn child even when hospitalized *and even when the parent must care for other children as well.*" *Id.* (emphasis added). The Sixth Circuit offered no reasons for reaching that conclusion and for reasons unknown chose not to publish the opinion.

Although it is not clear beyond doubt that the FMLA applies in Briones' case, the Court nevertheless concludes that the claim should be allowed to proceed given the absence of controlling authority in the Fifth Circuit, or any jurisdiction for that matter, that would require a contrary result. A literal reading of the FMLA makes it clear that Congress passed it to aid families when faced with a crisis such as the one faced by the Briones family when Calixto became gravely ill. The Court therefore concludes that the scope of the protections afforded by the Act is broad enough to encompass Briones' claim.

■ GPC argues that even if the Act is broad enough to encompass Briones' claim, it is nevertheless entitled to judgment as a matter of law because Briones has not demonstrated a prima facie case of an FMLA violation because GPC has proferred a legitimate non-discriminatory reason for Briones' termination, *i.e.*, his dishonesty. Briones, on the other hand, argues that he is entitled to judgment as a matter of law because GPC's proffered reason for terminating him is clearly pretextual.

In *Chaffin v. John H. Carter Co.*, the Fifth Circuit held that the McDonnell Douglas organizational framework, applicable when no direct evidence of unlawful discrimination exists, applies to claims that an employee was penalized for exercising rights guaranteed by the FMLA. 179 F.3d 316, 319 (5th Cir.1999). The McDonnell Douglas framework consists of a three-part burden-shifting scheme which places the onus on the plaintiff alleging retaliatory discharge to establish a prima facie case of discrimination by demonstrating that (1) he engaged in protected activity, (2) the employer discharged him, and (3) there is a causal connection between the protected activity and the discharge. *Id.* (citing *Long v. Eastfield College*, 88 F.3d 300 (5th Cir.1996)). Once plaintiff makes this preliminary showing, the employer must then articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *Id.* If the employer carries this burden of production then the presumption raised by the prima facie case is rebutted. *Id.* (citing *Texas Dep't of Commun. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). This burden of production "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[8]

■ In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court reviewed the *McDonnell Douglas* framework and clarified that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, evidence of pretext alone may, but not always, sustain a fact-finder's determination of unlawful discrimination. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir.2002) (citing *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097, 147 L.Ed.2d 105). Although the evidentiary burdens shift between the parties in this framework, "[t]he ultimate burden of persuading the trier of

---

8. The Fifth Circuit has emphasized that the employer's burden is one of *production,* not *persuasion.* *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir.2001) (citing *Reeves*, 120 S.Ct. 2097).

fact that the defendant intentionally discriminated against the plaintiff remains as all times with the plaintiff." *Id.* (quoting *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097, 147 L.Ed.2d 105).

Based on the foregoing it is clear that Briones cannot prevail on summary judgment by arguing that GPC's reason for firing him was pretextual. GPC's burden on the pretext issue is not one of persuasion and the Court can make no credibility determination on GPC's proferred reason. GPC claims to have fired Briones for a legitimate, non-FMLArelated reason, *i.e.,* dishonesty, which the Court must accept as true. Briones points to evidence on the dishonesty issue that he claims proves pretext but that evidence merely creates an issue of fact for trial. Accordingly, Briones' motion for partial summary judgment is denied.

GPC's motion for summary judgment presents a more challenging task. Although the issue of pretext is better decided via a trial on the merits where a credibility determination is appropriate, the issue of pretext is only relevant where plaintiff establishes a prima facie case of an FMLA violation. As part of that prima facie case plaintiff must show a causal connection between his firing and the FMLA leave. Even after *Reeves,* the Fifth Circuit has steadfastly held that an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief. *Auguster v. Vermilion Ph. Sch. Bd.,* 249 F.3d 400, 402 (5th Cir.2001). Although Briones has not pointed to an

overwhelming amount of affirmative evidence to show that the leave of absence "caused" his termination, the Court concludes that he has proffered enough to withstand summary judgment. Accordingly, GPC's motion for summary judgment on the FMLA claim is denied.

### III. Briones' ERISA Claim

Under ERISA it is unlawful for any person to discriminate against a plan participant or beneficiary (1) for exercising any right to which he is entitled under the plan, or (2) for the purpose of interfering with the attainment of any right to which such participant becomes entitled under the plan. *See* 29 U.S.C. § 1140. GPC points out that to establish a violation of section 1140 of ERISA, a plaintiff must show that the employer had the specific intent to engage in activity that violated ERISA.[9] GPC argues that Briones has no evidence to support such a claim and that therefore no issue of material fact exists as to that claim.

Briones did not profer any opposition to GPC's motion to dismiss the ERISA claim. Nor has the Court found any support for such a claim in the evidence either offered in support of Briones' motion or in opposition to GPC's motion. Consequently, with trial less than two months away, Briones has failed to demonstrate that a genuine issue of fact exists on this claim. Accordingly, the Court concludes that GPC is

---

9. "To recover under section [1140], a plaintiff 'need not show that sole reason for his termination was to interfere with pension rights; however the plaintiff must show that the employer had the specific intent to violate ERISA.'" Roper v. Exxon Corp., 27 F.Supp.2d 679, 684 (E.D.La.1998) (citing *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 (5th Cir.1992). Although the required showing of specific intent involves an employ- er's state of mind, such a required showing does not preclude summary judgment. *Id.* (citing *McGann v. H & H Music Co.,* 946 F.2d 401, 408 (5th Cir.1991)). Additionally, plaintiff must prove that the loss of benefits was more than the incidental result of discharge. *Id.* (citing *Carlos v. White Consol., Ind., Inc.,* 934 F.Supp. 227, 232 (W.D.Tex.1996); *Rose v. Intelogic Trace, Inc.,* 652 F.Supp. 1328, 1330 (W.D.Tex.1987)).

entitled to summary judgment on the ERISA claim.

## IV. Briones' Negligent Infliction of Emotional Distress Claim

GPC argues that Briones has no evidence to support a claim for intentional infliction of emotional distress. Under Louisiana law, a claimant must prove conduct "so extreme and outrageous in character that it went beyond all bounds of decency and was utterly intolerable in a civilized community." GPC also points out that in the workplace setting, disciplinary action is typically insufficient to support a claim of intentional infliction of emotional distress. GPC argues that Briones has no evidence to support such a claim and that therefore no issue of material fact as to that claim.[10]

Briones did not proffer any opposition to GPC's motion to dismiss the intentional infliction of emotional distress claim. Nor has the Court found, based on the evidence offered in support of Briones' motion or in opposition to GPC's motion, anything to suggest that GPC's conduct rose to level of outrageousness required under Louisiana law. Consequently, with trial less than two months away, Briones has failed to demonstrate that a genuine issue of fact exists on this claim. Accordingly, the Court concludes that GPC is entitled to summary judgment on the intentional infliction of emotional distress claim.

Accordingly;

**IT IS ORDERED** that **Claimant's Motion for Partial Summary Judgment (Rec.Doc. 21)** filed by plaintiffs Julian Briones III, individually and on behalf of his minor son Calixto Briones should be and is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 24)** filed by defendant Genuine Parts Company d/b/a NAPA Auto Parts should be and is hereby **DENIED IN PART AND GRANTED IN PART.** The motion is **DENIED** as to the FMLA claim and **GRANTED** as to the ERISA and intentional infliction of emotional distress claims, and those claims are **DISMISSED WITH PREJUDICE;**

**IT IS FURTHER ORDERED** that counsel immediately contact the assigned magistrate judge for scheduling of a settlement conference, said conference to take place no later than two (2) weeks prior to the final pre-trial conference.

---

**10.** Under Louisiana law, in order to recover for intentional infliction of emotional distress, a plaintiff is required to establish three elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Smith v. Amedisys, Inc.,* 298 F.3d 434 (5th Cir.2002) (quoting *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La. 1991)). Moreover, "[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.*